**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

ANDREW GILES, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

THE SCION GROUP LLC,

Defendant.

Case No: 1:22-cv-03249

**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL**

Plaintiff, ANDREW GILES ("Named Plaintiff") and Opt-In Plaintiffs STEVEN BOCK, ANDREW BOOTH, ROBERT HALL, ERIC JACKSON, GREGORY PICKETT, JUAN GONZALEZ, MATTHEW MASON, JOSHUA MCNEW, GERALD SMITH, SHAROZ SMITH, BRIAN TUCKER, DEWAYNE VANHORN, and FRANK VLAHOS (individually "Opt-In Plaintiff" or collectively, and with Named Plaintiff, the "Plaintiffs"), submit this Unopposed Motion for Approval of the FLSA Settlement and Entry of Dismissal (the "Stipulated Motion") and state as follows:

## INTRODUCTION

Plaintiffs and Defendant, THE SCION GROUP LLC ("Scion" or "Defendant") have entered into a "Settlement Agreement" to resolve the Fair Labor Standards Act claims (the "FLSA" 29 U.S.C. 216(b)) arising from this action [Exhibit 1 - the FLSA Settlement Agreement]. Pursuant to this Court's Order [D.E. 44], Plaintiffs file this Unopposed Motion with the Court for approval of the Settlement Agreement and to dismiss this case. The Settlement Agreement is fair and reasonable, as it fully and adequately satisfies this Court's criteria for settlements of bona fide wage disputes under the FLSA.

It is generally accepted that court approval of the settlement of an FLSA action settlements is necessary to effectuate a valid and enforceable release of the FLSA claims asserted by plaintiffs. *See* Walton v. United Consumer Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986) (*citing* Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982)). If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." Lynn's, 679 F.2d at 1354

## FACTUAL BACKGROUND

1. Plaintiffs maintain that they were/are Maintenance Supervisors working for Scion at various off-campus student housing communities across the country.

2. Maintenance Supervisors were all paid on a salary basis and were not eligible for overtime compensation.

3. Named Plaintiff Giles filed the instant action June 22, 2022, alleging that Scion violated the FLSA by misclassifying Giles and similarly situated Maintenance Supervisors as exempt from overtime compensation and by allegedly failing to pay him overtime premiums. [DE 1]

4. Named Plaintiff Giles was subsequently joined by thirteen (13) additional Opt-In Plaintiffs.

5. In lieu of filing their own individual lawsuits or actions, each of the thirteen Opt-In party Plaintiffs specifically authorized Named Plaintiff Andrew Giles to negotiate and reach a settlement with Scion on their behalf and agreed to be bound by the terms of any settlement reached according to the express terms of the Consent to Join Forms. *See* [DE 5-1, Tucker; DE 5-2, G. Smith; DE 5-3, Pickett; DE 6-1, Boothe; DE 6-2, S. Smith; DE 6-3, Jackson; DE 8-1, Mason; DE 9-1, Hall; DE 10-1, Vanhorn DE 23-1, Bock; DE 27-1, Gonzalez; DE 31-1, McNew; DE 32-1,

Vlahos.][1]

6. Scion denied that it misclassified Plaintiffs and Maintenance Supervisors and avers that it acted in good faith compliance with the FLSA. Moreover, Scion contends that Plaintiffs inflated the quantum of hours allegedly worked and denies that Plaintiffs are owed overtime compensation. [DE 13]

7. On August 14, 2022, Plaintiffs filed their motion for conditional class certification pursuant to the FLSA. [DE 17]

8. On August 19, 2022, the Parties filed their Joint Initial Status Report. [DE 19]

9. Pursuant to the Joint Initial Status Report, the Parties agreed to informally exchange payroll records and time records for the limited purpose of exploring settlement of Plaintiffs' claims. [DE 19]

10. Thereafter, the Parties agreed to participate in mediation. [DE 21]

11. On October 28, 2022, the Parties engaged in mediation before experienced labor and employment mediator Carlos J. Burruezo, Esquire.

12. The mediation resulted in an impasse. The Parties notified the Court of the impasse [DE 28, 29], the Parties initiated written discovery, and they engaged in motion practice regarding the timing and scope of discovery. [DE 33, 36]

13. During discovery, the Parties continued to discuss settlement resolution, and on December 19, 2022, the Parties notified the Court that they reached a stipulated settlement of Plaintiffs' claims. [DE 42].

---

[1] "I specifically authorize the named Plaintiff, along with his or her counsel of record, Mitchell Feldman Esq. and the law firm of Feldman Legal Group, to represent me in this lawsuit, to act as my agent to prosecute this lawsuit on my behalf, to file any related state law claims, and to negotiate a binding settlement of all claims for overtime wages, whether under state or Federal law, I have against The Scion Group LLC and its affiliated and related companies, subsidiaries, or parent corporation or any other future named Defendant(s)."

14. Despite the Parties' arguments and differences, the Parties have reached a compromise to resolve the Plaintiffs' claims, including their attorney's fees and costs incurred. The Parties agree it is desirable that this matter be fully and finally resolved in the manner and upon the terms set forth in the FLSA Settlement Agreement [Exhibit 1].

15. Plaintiffs and their experienced FLSA wage and hour attorneys have determined that the settlement set forth in the FLSA Settlement Agreement is in their best interests. Plaintiffs recognize and acknowledge the time and expense of continued litigation necessary to prosecute this case through summary judgment, trial, and possible appeal. Moreover, the result is inherently uncertain and risky, including the risk of a recovery of $0.00 and possibility that Plaintiffs would be responsible for Defendant's taxable costs. Additionally, continued litigation could result in protracted motion practice, which would ultimately delay a determination on the merits of Plaintiffs' overtime wage claims.

16. Given that discovery has just begun, and the Parties had served, but not responded to, written interrogatories and document requests, the case would continue for, at a minimum, one year, and if the Court were to grant conditional certification, the scope of the discovery and factual disputes would expand, and trial would likely be further delayed. These factual and legal disputes which would require discovery and resolution include:

a. Whether Plaintiffs were properly classified as exempt from overtime compensation under the FLSA;

b. If so, whether Plaintiffs performed work in excess of forty (40) hours during each applicable workweek; and

c. Whether a two or three-year statute of limitations should apply; and

d. Whether Plaintiffs should be awarded liquidated damages under the relevant legal standard.

17. Notwithstanding the foregoing, upon careful review of the Plaintiffs' payroll records and time records, Named Plaintiff Giles, with assistance of counsel, determined that a compromise was in the best interests of all Plaintiffs.

18. In reaching this compromise, Named Plaintiff Giles and Plaintiffs' Counsel considered the fact that should they proceed to trial, there is a risk that the trier of fact could conclude that they were properly classified as exempt from overtime compensation and eliminate their wage claims entirely, and Plaintiffs would not only have a $0 recovery, but they would risk having to pay all the taxable costs of thousands of dollars for all the Plaintiffs.

19. Thus, on January 24, 2023, the Parties finalized the negotiated Settlement Agreement, which memorialized, in writing, the essential and material terms of the Parties. All parties and their counsel approve the terms and conditions of the Settlement Agreement. Named Plaintiff Giles has executed the written settlement agreement individually, in his representative capacity, and as agent for the Opt-In Plaintiffs. Plaintiffs' counsel has also executed the Settlement Agreement as agent for the Opt-In Plaintiffs. The FLSA Settlement Agreement is executed in counterparts is attached as Exhibit 1.

20. The Plaintiffs reached this settlement with advice of counsel and relied upon their counsel to analyze the payroll records, time records, and other business records to perform the settlement wage calculations. Plaintiffs' counsel calculated the final settlement distributions to each Plaintiff based upon four (4) overtime hours per week, during a two (2) year statute of limitations for each Plaintiff and applying a half-time damages model for salaried employees pursuant to 29 C.F.R. § 778.114. The Final Settlement Allocation for all Plaintiffs is set forth as Exhibit 2 - Plaintiffs' Settlement Allocation, which is also attached to the Settlement Agreement as Exhibit B thereto.

a. It should be noted that two Opt-In Plaintiffs, Gregory Pickett and Bradley

Boothe, had no qualified work weeks in the two-year statute of limitations period, and thus were assigned $100.00 each for the resolution of their claims.

21. Pursuant to the terms of the Settlement Agreement, Defendant Scion has agreed to pay Plaintiffs the aggregate sum of $36,850.00 in allegedly unpaid wages.

22. In addition to resolving the Plaintiffs' underlying claims, the Settlement Agreement resolves Plaintiffs' outstanding claims for attorneys' fees and costs, which are recognized by courts as an integral part of their claim. Pursuant to the terms of the Settlement Agreement, the Parties separately negotiated and agreed that Scion would pay Plaintiffs' attorneys' fees and costs, totaling $53,737.00, which includes reimbursement of Plaintiffs' costs incurred in this matter.

a. It should be noted that the Settlement Agreement also provides for Scion to pay Plaintiffs' share of the costs of mediation which resulted in impasse ($1,347.50)

23. Plaintiffs' attorneys' fees and costs were separately negotiated and agreed upon by the Parties without regard to (and only after reaching an agreement regarding) the amount paid to Plaintiffs so as not to affect the wage payments.

24. For purposes of settlement, Scion agrees that the quantum of attorneys' fees and costs is fair and reasonable and agrees that the Parties negotiated a compromise separate and aside from the sum Scion agreed pay the Plaintiffs for their unpaid wage claim. Courts recognize that a negotiated settlement is fair and reasonable when the amount to be paid by the Defendant to settle the Plaintiffs' wage claims are not interfered with or affected by the amount or sum the Defendant agrees to pay to the Plaintiffs' attorneys and is not a percentage or a contingency fee. Bonetti v. Embarq Management Company, 715 F. Supp. 2d 1222 (M.D. Fla. 2009) *See* Exhibit 1 - Settlement Agreement § 3(a).

25. Defendant has been represented by highly competent and professional counsel, who have vigorously represented the Defendant.

26. Accordingly, Plaintiffs' Counsel was required to expend significant amounts of time to ultimately reach this resolution. Feldman Legal Group incurred in excess of 193.4 hours which equates to $77,360.00 in lodestar fees. Similarly, Williams Law P.A. incurred 87.7 hours which equates to $35,080.00 in lodestar fees. Together, Plaintiffs' Counsel incurred in excess of $112,440 in attorneys' fees.

27. Plaintiffs' Counsel agreed to accept a steep reduction in attorneys' fees and costs (62% reduction) in order to facilitate Plaintiffs' desire to resolve this matter quickly and without incurring the significant time and risk associated with litigating this matter through trial. This is especially true considering the Plaintiffs had substantial risk of obtaining a zero-dollar award or worse, incurring the cost of defense.

WHEREFORE, for the reasons set forth above and as set forth in the below Memorandum of Law, the Parties respectfully request that the Court enter an order approving the Settlement Agreement, reserve Jurisdiction for a period of 60 days to enforce the terms of the Settlement Agreement and dismiss this matter with prejudice.

**MEMORANDUM OF LAW**

"Before approving an FLSA settlement, a court must find that the settlement 'represents a fair and equitable resolution of a bona fide dispute' under the FLSA. If a court is satisfied that an FLSA settlement is the product of contested litigation, approval of the settlement is usually appropriate." Donaldson v. MBR Cent. Ill. Pizza, LLC, 2019 U.S. Dist. LEXIS 158121(citing Salcedo v. D'Arcy Buick GMC, Inc., 227 F. Supp. 3d 960, 961 (N.D. Ill. 2016) *and* Koszyk v. Country Fin. a/k/a CC Servs., Inc., No. 16 Civ 3571, 2016 U.S. Dist. LEXIS 126893, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016)).

In the present case, the Settlement Agreement is a fair and equitable resolution of Plaintiffs' FLSA claims. Plaintiffs maintain they were employed as salaried Maintenance Supervisors by

Scion. The core bona fide FLSA dispute in this case relates to whether Plaintiffs were misclassified as exempt employees and/or whether Plaintiffs were entitled to overtime compensation for work allegedly performed in excess of forty (40) hours per week.

The Plaintiffs would face significant obstacles and risk an unsuccessful outcome if this case were to proceed to trial. Plaintiffs would face a risk at trial of not prevailing on their wage claims because they would have to establish that they performed non-exempt job duties such that they were entitled to overtime compensation. Second, Plaintiffs would have had to establish that they in fact worked more than forty (40) hours a week without adequate overtime compensation.

At trial, Scion would have claimed that (i) Scion properly classified Plaintiffs in good faith compliance with the FLSA as exempt from overtime compensation; (ii) Scion implemented policies and safeguards to prevent Maintenance Supervisors from performing non-exempt work; and (iii) Scion enacted and enforced policies sufficient to show that it acted in both objective and subjective good faith such that a two-year statute of limitations should apply and that liquidated damages are not appropriate in this instance.

Whether Plaintiffs are exempt under one or more exemptions under the FLSA is uncertain and a mixed question of law and fact. Additional questions and legal issues to be resolved by the Court or the Jury include the amount of overtime hours the Plaintiffs worked; whether Scion acted in both with objective and subjective good faith in their classification such that liquidated damages might be awarded or not, and whether the classification as exempt was a willful violation such that a 3 year SOL should apply. In consideration of the close factual issues raised, and the significant costs of litigation required to build a record sufficient to prove the claims or defenses, the Parties reasonably chose to compromise this bona fide dispute. Named Plaintiff Giles had continuously sought a compromise of the claims, and when such an opportunity arose, he chose to pursue resolution and reach a reasonable compromise that he determined, upon advice of counsel, was

also in the best interests of all Plaintiffs. Logic dictates compromise instead of forcing Plaintiffs to risk going all the way to trial and gamble on prevailing on the liability or recovering more in wages than they settled for, while also carrying the risk of having to pay Defendant thousands of dollars in costs and expenses if they did not prevail on their claims while offered a compromise.

Ultimately, the Parties agreed to compromise for the sum of $36,850.00 in wages to be paid to the Plaintiffs. This represents a reasonable compromise of the Plaintiffs' overtime wage claims in which each person with qualifying workweeks is paid on average $3,055.00 in wages. These payments represent approximately 2.5 unpaid overtime hours per work week plus an equal sum in liquidated damages, for each Plaintiff with qualifying workweeks. Accordingly, the Settlement Agreement represents a fair and equitable resolution of a bona fide dispute resulting from over six months of heavily contested litigation.

Due to the contested nature of this matter, Plaintiffs and their Counsel incurred substantial attorneys' fees and costs in this litigation. Again, the Court should agree that the Settlement Agreement is a fair and reasonable compromise of a heavily disputed and contested claim. The Settlement Agreement provides as a material term that Defendant shall pay Plaintiffs' Counsel attorneys' fees and costs in the amount of $53,737.00, which is 62% less than Plaintiffs' Counsel's actual and reasonable time spent litigating and resolving this matter.

When "the plaintiff's attorneys' fee is agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to his attorney, the Court [should] approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." Bonetti v. Embarq Management Company, 715 F. Supp. 2d 1222 (M.D. Fla. 2009)

In the Settlement Agreement, the Plaintiffs' attorneys' fees and costs were stipulated and

agreed to be paid by the Defendant and were separately negotiated from (and only after agreeing upon) the sums agreed to be paid for the wage claims of each Plaintiff. Moreover, Plaintiffs' attorneys incurred substantially higher sums in fees (lodestars) and through separate negotiations with Defendant, the Parties reached a compromise as to the sum of attorneys' fees and costs to be paid by the Defendant without regard to the amount paid to Plaintiffs. Additionally, Scion agrees that "the payment of the [agreed upon] Attorneys' Fee Amount is a fair and reasonable compromise of Plaintiffs' claim for attorney's fees." *See* Exhibit 1 - Settlement Agreement § 3(a).

Considering Scion's agreement and the significant reduction of attorneys' fees by Plaintiffs' Counsel instead of insisting upon a hearing on the quantum of fees, it is clear that the entire Settlement Agreement is fair and reasonable and should be approved. "The purpose of a fee shifting statute, which is to enable smaller claims to be litigated, would be thwarted if attorneys' fees had to be strictly proportional to the amount recovered." Tuf Racing Prods., Inc. v. Am.Suzuki Motor Corp., 223 F.3d 585, 592 (7th Cir.2000). "Litigation is expensive, and 'it is no surprise that the cost to pursue the contested claim will often exceed the amount in controversy.'" Anderson v. AB Painting & Sandblasting Inc., 578 F.3d 542, 546 (7th Cir.2009); *see* SKF USA Inc. v. Bjerkness, No. 09 Civ 2232, 2011 WL 4501395, at *3 (N.D.Ill.2011) (refusing to reduce a $1.3 million dollar award of attorneys' fees when the damages were only $81,068 because Congress predetermined the claim was worth bringing even though there was great disparity between the amount recovered and the attorneys' fees requested).

**CONCLUSION**

For the above stated reasons, Plaintiffs' request that the Court approve the Parties' Settlement Agreement and enter an Order dismissing this matter. Counsel for Plaintiff has conferred with Scion, who does not oppose, and consents to, the relief requested herein.

Dated this 25th day of January 2023.

/s/Mitchell Feldman, Esq.
Mitchell L. Feldman, Esquire
FELDMAN LEGAL GROUP
Florida Bar No.: 0080349
6916 W. Linebaugh Ave, #101
Tampa, Florida 33625
Tel: 813-639-9366
Fax: 813-639-9376
Mfeldman@flandgatrialattorneys.com

David L. Lee
LAW OFFICES OF DAVID L. LEE
542 S. Dearborn St., Suite 660
Chicago, Illinois 60605
Tel: (312) 952-1321
d-lee@davidleelaw.com

Benjamin Lee Williams (pro hac vice)
Williams Law P.A.
Florida Bar No.: 0030657
123 18th Avenue N. Unit A
Jacksonville Beach, FL 32250
Tel: 904-580-6060
bwilliams@williamslawjax.com

Attorneys for Plaintiff Giles and the Opt-In Plaintiffs